# BENJAMIN E. GREEN

*vs.*

## COLUMBUS ALEXANDER ET AL.

1. A sale under a defaulted deed of trust set aside because it appeared that at the time of sale the property was in possession of the military authorities, and that all persons were forbidden to enter upon the premises for the purpose of examining the same.

2. Another sufficient reason for setting aside such a sale is that the owner of the property was within the Confederate lines and was thereby prevented from attending the sale.

In Equity. No. 1465. Decided December 21, 1870.

HEARING in General Term in the first instance on a bill filed to set aside a trustee's sale of real estate.

THE FACTS are stated in the opinion.

Mr. R. J. MERRICK for plaintiff:

1. If the court believes from the evidence before it that payments were made of portions of the loan, and that Alexander, in consideration of such payments, agreed not to press a sale, and to look for the residue of the loan to the rents and profits of the property, then his direction to the trustee to sell, and the sale made in consequence of such direction constituted a fraud. Story's Equity Jurisprudence, Section 315, 316; Barker *vs.* Marine Insurance Company, 2 Mason, 369; East India Company *vs.* Henchman, 1 Vesey, Jr., 287 and notes; Massey *vs.* Davies, 2 Vesey, Jr., 318 and notes; Purcell *vs.* McNamara, 14 Vesey, Jr., 91; Hugnenin *vs.* Beaseley, 14 Vesey, Jr., 273; Parkist *vs.* Alexander, 1 Johns. Ch., 394; Van Epps *vs.* Van Epps, 9 Paige, 237.

The provisions for a sale made in the deed were waived by the defendant Alexander, by his parol agreement. Botsford *vs.* Burr, 2 Johnson Ch., 415.

2. If any just cause to doubt the propriety of a sale appears, inadequacy of price would be a consideration very proper to be viewed in connection with it. Glenn *vs.* Clapp, 11 G. & J., 1; Heutze *vs.* Slengel, 1 Md. Ch. Dec., 283.

That a cloud rested upon the title at the time of sale, which might probably, with some exertion on the part of the trustee, be removed, is, in connection with the fact that the property sold much below its real value, a sufficient ground for ordering a second sale. *Id.*

When a sale is objected to upon the ground of inadequacy of price, which inadequacy may be traced to doubts about the title, it becomes material to inquire whether the trustee might not by reasonable efforts have removed the cloud; and if the court see such efforts were not used, the question as to the ratification of the sale may be affected by such neglect. Cunningham *vs.* Schley, 6 Gill., 224.

If there should be made to appear, either before or after a sale has been ratified, any injurious mistake, misrepresentation, or fraud, the biddings will be opened, the sale rejected, or the order of ratification rescinded, and the property again sent into market to be sold. Anderson *vs.* Foulke, 2 H. & G., 346; Johnson *vs.* Dorsey, 6 Gill., 269; See also Cocks *vs.* Izard, 7 Wallace, 559.

3. The effect of the civil war, precluded the plaintiff or Duff Green from discharging the indebtedness before the sale, and precluded all communication between them and the trustee or Alexander.

Where the party whose property is sold, or who is liable for a deficiency is, without negligence on his part, prevented from attending or being represented at the sale, by unavoidable causes, *e. g.*, the incapacity by sickness of his agent, or by an accident delaying him on his way to the sale, or by accidental delay of a letter sent by his agent to apprise him of the time of sale and the price brought is greatly inadequate, his application for a resale should be granted. Thompson *vs.* Mount, 1 Barber's Ch., 607; Hoppock *vs.* Conklin, 4 Sandf. Ch., 582.

Where a co-defendant of the mortgagor, in a foreclosure suit, took an unconscionable advantage of the illness of the latter, which prevented him from attending the sale, in

interfering to prevent a postponement of the sale, and himself became the purchaser at less than one-third of the value of the premises, the court ordered a resale. Billington *vs.* Forbes, 10 Paige, 487.

The advertisement is designed not only to let the public know what property is brought into market, but also to afford the owner an opportunity to redeem it from sale, or to prevent its being sacrificed. Kauffman *vs.* Walker, 9 Md., 229.

After the declaration of war between the United States and the Confederate States, neither the plaintiff nor Duff Green could have legally paid the debt to Alexander, as all commercial intercourse between the citizens of the respective belligerents was absolutely prohibited. The execution of the contract was suspended, and no proceeding could be had to enforce it. Neither could the plaintiff have had any notice of the sale. The sale being merely to enforce the fulfillment of the original contract, was therefore wholly void. Kanawha Coal Company *vs.* Kanawha and Ohio Coal Company, Blatchford, J.; Tucker *vs.* Watson, 6 Amer. Law Reg., N. S., 220; Jackson Insurance Company *vs.* Stewart, *Id.*, 732; Connecticut Mutual Life Insurance Company *vs.* Hall, 7 *Id.*, 606; Cuyler *vs.* Ferrill, 8 *Id.*, 100; Semmes *vs.* City Fire Insurance Company, 6 Blatchford, C. C. R., 445, 8 Amer. Law Reg., 673; Thorington *vs.* Smythe, 8 Wallace, 1; United States *vs.* Grossmeyer, 9 Wallace, 72; Act July 13, 1861—12, United States Statutes at Large, 257; Proclamation of President, August 16, 1861, *Id.*, 1862.

4. The military possession of the property by the Government at the time of sale must necessarily have affected the sale and deterred the bidders. The property being used as a prison at the time, it could not be properly examined by persons desiring to bid. No one knew, or could have known when possession could be had, or whether it could ever be had, or whether the Government would not confiscate the property and permanently retain it. The

trustee could not and did not enter upon the property, as was incumbent upon him; and he could not and did not deliver possession to the purchaser. No sale could properly be had of property so seized into the hands of the sovereign power.

5. Where a portion of the property could conveniently have been sold, and would probably have discharged the debt, it is irregular to sell the whole, and a sale of the whole will be set aside. Goff vs. Jones, 6 Wendell, 522.

The sale of separate parcels of real estate together as one parcel is always' sufficient cause for setting aside the sale. American Ins. Co. vs. Oakley, 9 Paige, 259; Tripp vs. Cook, 26 Wendell, 143; Groff vs. Jones, 6 Wendell, 522.

A sale in mass by a judicial officer of divers lots of ground, separate and distinct from each other, even though contiguous, is considered as prima facie void. Nesbitt vs. Dallam, 7 Gill & Johnson, 495; Woods vs. Monell, 1 Johns. Ch. 502; Jackson vs. Newton, 18 Johnson, 355; Ryerson vs. Nicholson, 2 Yeates, 516; Rowley vs. Brown, 1 Binney, 61; Berry vs. Griffith, 2 Harris & Gill, 337.

A sale of real property by a judicial officer for much less than its real value furnishes intrinsic evidence of irregularity and unfairness, when taken in connection with any impropriety in regard to the time, place, and other circumstances of the sale. Nesbitt vs. Dallam, 7 Gill & Johnson, 495.

Messrs. BRENT and PHILLIPS for defendant:

The plaintiff has improperly joined, as appears on the face of his bill, two distinct causes of action, viz, his claim to cancel the sale from Webb to Alexander, and his claim to other lots, which he says Alexander has also possessed, but as this court has no jurisdiction over the trespass part of the suit, for which a remedy exists at law by ejectment or trespass, the court will simply regard it as a suit for the only matter over which it has jurisdiction, viz, the trust sale. Varrick vs. Smith, 5 Paige, 137.

The bill vaguely hints that the plaintiff ought not to be bound by the arrangments made by his father (although plenary authority was delegated to him), because the plaintiff was kept ignorant of the terms of the arrangement made by his agent. But the principal is bound by the acts of his agent within the scope of his authority, as an agent, to get a bill discounted, may endorse it in the name of his employer, or a servant authorized to sell a horse may warrant him. Paley on Agency, 198, side page; *Id.*, 209, side page.

Mr. Justice MAC ARTHUR delivered the opinion of the Court:

The object of the bill in this suit is to set aside a sale of real estate consisting of certain lots and buildings situated in the city of Washington, made on the 29th day of November, 1862, under and by virtue of two trust deeds given to secure a loan of money. It is admitted that the plaintiff had been the owner of the property previous to the time the deeds were executed, but he alleges that they were executed in pursuance of a fictitious arrangement which it is not necessary to detail here and which he claims makes them merely colorable and void. He also alleges that the loan of the money was arranged by his father, Duff Green, whom he had authorized to procure a loan, but that he was kept in ignorance of the terms upon which the money was borrowed, and the same was borrowed on usurious rates of interest, and that the indebtedness had been discharged to a very great extent prior to the sale of the property, notwithstanding which the defendant Alexander had procured the premises to be sold as aforesaid ; that the said defendant Alexander pretended at such sale that he was buying for the benefit of plaintiff and his family, and that by his representations and conduct parties who attended the sale for the purpose of bidding, declined to do so, in consequence of which the property sold for a grossly inadequate price. Objections are also made to the manner of

the advertisement, and because the property was not sold in parcels. The relief asked for, is that the sale for these reasons may be set aside and the plaintiff be permitted to redeem. A more particular statement of the facts relating to these propositions is rendered unnecessary, for we are of opinion that they are not sustained, and we should be inclined to dismiss the bill were it not for considerations growing out of two other points, which are also claimed fatally to affect the validity of the sale. At the time of such sale the property embraced in the trust deeds had been appropriated by the United States Government for military purposes, and was actually used and guarded as a place for the confinement of prisoners of war. The fact is clearly proved that no person was allowed to inspect the premises, unless by express permission of the War Department or of the officers in command, and as this privilege depended entirely upon the pleasure of the public authorities in granting it they would, of course, be compelled to make the stern discrimination demanded by the necessities of war. There is no pretence that there was any general order on the occasion of the sale, relaxing the usual military rule. The premises were guarded by soldiers, who surrounded the buildings. The mere privilege of access when encumbered with such rigorous scrutiny can scarcely be called either open or general; and it seems to us that it would be impossible to procure under such circumstances a fair sale when free competition was obstructed by a barrier so impassable as the bayonet.

The possession held by the Government was quite different from the estate which an ordinary tenant claims by virtue of a lease. It was an exercise of the sovereign power, not depending upon contract or the precarious tenure of the owner's consent, but upon its own pleasure and upon the requirements in the administrative functions of the war. The seizure of the property was really a species of condemnation, while it lasted, to the public use; and it was beyond

all human sagacity to forsee how long the Government would be obliged to use it; nor was there any source of information which could be consulted on this important particular. The purchaser would be unable to determine when he could obtain the peaceable possession of the property, and, as a necessary consequence, its value in his estimate would be practically impaired. It is the unanimous opinion of the members of the court who heard this case that these views, founded upon the facts attending the sale, would be sufficient upon which to grant the relief prayed for in the bill. But there is an additional reason leading to the same result under a well established principle of public law.

The plaintiff was an inhabitant of the State of Georgia at the breaking out of the rebellion, and he continued to be domiciled and to reside there up to the time of the sale, and afterwards. He was consequently within the territorial limits of the so-called Confederate lines at the time of the proceedings to sell these houses and lots under the stipulations in the trust deeds. It is contended that the right to execute the power of sale was suspended as to him, and all other parties domiciled like him, during the continuance of the war in all the States and Districts under the control of the United States.

There can be no doubt respecting the general principle, that when war exists between two countries, all intercourse and communication is interdicted to their respective citizens, unless by express license of their governments. This doctrine is applied to the relations of creditors and debtors, even where the indebtedness or contract existed prior to the war; so that all rights and remedies arising upon private contracts are suspended until hostilities cease. Interest upon private debts stop, the statutes of limitation cease to run, and parties are excluded from the tribunals of the belligerent by an inability to sue or be sued. Upon this ground the plaintiff claims that Alexander had no right to

·compel the performance of the contract in this case by the sale of the lease when the condition of war still existed.

It is now scarcely a topic proper for discussion, whether the late war is to be regarded as a public one. Congress, by the Act of June 13, 1861, and the President by his proclamation in August following prohibiting all commercial intercourse between the States in revolt and those which were under the control of the Government, fixed upon it the chief characteristic of a public war. This construction has been maintained by the Supreme Court not only in some prize cases, where they applied the doctrines of international law, but also in the case of United States vs. Grossmayer, 9 Wallace, 72, where they hold that the relations of debtor and creditor are quite as much affected by the non-intercourse act and the President's proclamation as any other kind of communication between the belligerents. I have been furnished with a printed copy of a decision of that court made in the case of Dean vs. Nelson not yet reported* and pronounced since the case at bar was submitted, in which they hold that proceedings to foreclose a mortgage within the Union lines during the war, whilst the defendants were absent in the Confederate lines, did not extinguish the right of the mortgagee to redeem. The following is the language of the court:

" The defendants in the proceedings were within the Confederate lines at the time and it was unlawful for them to cross these lines. Two of them had been expelled the Union lines by military authority and were not permitted to return. The other Benjamin May had never left the Confederate lines. A notice directed to them and published in a newspaper was a mere idle form. They could not lawfully see or obey it. As to them the proceedings were wholly void and inoperative. This leaves the equity of redemption in the mortgaged premises inextinguished."

It appears to me that this authoritative decision must

*Now reported in 10 Wall, 158.

constitute the law for our judgment in this case. That was,, indeed, a proceeding in a court of law or a pretended court, of law; and in the case at bar, the party attempted the same thing without the aid of judicial process by merely publishing a notice in a newspaper. But we think it quite reasonable that the same rule should apply to it. The Kanawha Coal Co. *vs.* Kanawha & Ohio Coal Co., decided in the United States Circuit Court for the southern district of New York by Judge Blacthford,* involves this very point.. The whole doctrine respecting the illegality of a sale made under such circumstances is there extensively discussed by the learned judge, and the position is laid down, that such a sale is equally void, whether the proceedings were by advertisement or under a judgment of a court, and we have no doubt of the correctness of this conclusion. The deci-- sion of the Supreme Court, however, just cited, obviates the necessity of any elaborate discussion.

It follows from what has been said, that the relief prayed for must be granted and the sale complained of set aside,. and the deed or deeds made to the defendant Alexander vacated and annulled, and declared to be void and of no effect. The suit must be remitted to the special term to order an account of the amounts due Alexander, including the original indebtedness, the amounts paid by him to satisfy the lien in favor of the Bank of Washington, and upon the judgments which were liens upon the property embraced in the trust deeds and for the sums expended for improve- ments upon the premises. And that an account be also- taken of the rents and profits of the premises received by him, since he acquired possession, and that the plaintiff be permitted to redeem upon such terms as to the court at special term shall seem proper.

*Let a decree be drawn in conformity with these directions.*

---

*7 Blatchf., p. 391.